UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TONI LESOWITZ, | ) | CASE NO. 5:17-cv-2174 |
| PLAINTIFF, | ) ) ) | |
| vs. | ) | JUDGE SARA LIOI |
| ROY TITTLE, *et al.*, | ) ) ) | |
| DEFENDANTS. | ) ) ) | **MEMORANDUM OPINION** |

Defendants, Roy Tittle ("Officer Tittle") and Kevin Brown ("Officer Brown") (collectively "Defendants"), filed a motion to dismiss plaintiff's amended complaint. (Doc. No. 10 ["Mot. Dismiss"].) In response, plaintiff Toni Lesowitz ("Lesowitz") filed a motion for leave to "re-amend" the complaint. (Doc. No. 13 ["Mot. Re-Amend"].) In turn, defendants filed a memorandum in opposition to the motion to "re-amend." (Doc. No. 14 ["Opp'n Re-Amend"].) For the reasons discussed below, Lesowitz's motion for leave to "re-amend" the complaint is GRANTED, and Defendants' motion to dismiss is DENIED, as moot.

**I. BACKGROUND**

This § 1983 action arises from the following course of events, which occurred in the early morning hours of October 16, 2015, near Pucci's Restaurant at 2012 Tanglewood Avenue, Alliance, Ohio.[1] (Doc. No. 13-2 (Proposed Re-Amended Complaint ["Re-Amend. Compl."]) at ¶¶ 6, 8.) It all began with a "Call for Service" made by a neighbor, complaining of loud music

---

[1] The facts are set forth only for context. The Court is *not* making fact-findings and any fact set forth herein remains subject to the appropriate burden(s) of proof going forward. Further, as will be discussed below, the motion for leave to re-amend the complaint will be granted only if the facts contained in the proposed re-amended complaint state a claim for which relief may be granted under the Rule 12(b)(6) motion to dismiss standard. Therefore, because the facts pertinent to this analysis are those alleged in the Proposed Re-Amended Complaint, the Court will consider those facts true for purposes of this analysis.

coming from the restaurant at 1:35:51 a.m.[2] (*Id.* at ¶ 8.) Officers Tittle and Brown, of the Alliance Police Department, were dispatched to the location. (*Id.* at ¶¶ 3, 4, 8.) Soon after arriving, Officer Brown cleared the call at 1:40:44 a.m., reporting that the restaurant was "'closed and quiet.'" (*Id.* at ¶ 8.)

At 2:01:12 a.m., Officer Brown made an "Out with Subject" "Call for Service" from the Pucci's parking lot. (*Id.* at ¶ 9.) Around the same time, the rear dash-cam video of Officer Brown's cruiser was activated, showing Officer Tittle's vehicle parked next to Officer Brown's. (*Id.* at ¶ 10.) The footage shows Officer Tittle first shining a light onto State Street then driving in that direction. (*Id.*) No disturbance can be heard on this video. (*Id.*)

After backing his vehicle up to that of Officer Tittle, Officer Brown exited his cruiser, and Officer Brown's Point-of-View ("POV") camera activated. (*Id.*) Officer Brown's POV camera shows his first contact with Lesowitz, who was accompanied by Varlonous James ("James"), at approximately 2:01 a.m. (*Id.* at ¶ 11.) The footage captured the conversation between Officer Tittle, Lesowitz, and James, during which Lesowitz explained that she was staying at the Holiday Inn across the street. (*Id.* at ¶ 12.) Though Lesowitz and James appeared to be calm and compliant, Officer Tittle instructed them to leave the premises, removed his handcuffs from his pouch, and shook them at the two. (*Id.*) Officer Tittle can be heard saying, "Stop running your mouth and walk." (*Id.*) Lesowitz and James can then be seen crossing Tanglewood Avenue and walking towards the Holiday Inn. (*Id.* at ¶ 13.)

As they walk away, Lesowitz "can be heard saying, 'Thank you, Officers.' Officer Tittle then says, 'Have a good night.'" (*Id.*) Neither the POV camera nor Officer Brown's rear dash-

---

[2] In the complaint, Lesowitz states exact times for these incidents. It is unclear how Lesowitz came to acquire records and video evidence to inform the facts of her complaint, especially these specific times. But as required for a motion to dismiss, the facts of the complaint, including those times, will be taken as true and will be used in this opinion.

cam, which was continuously recording State Street, show any vehicles traveling in either direction during the time Lesowitz and James are "walking westbound along State Street nor while they cross to the north side of State Street." (*Id.* at ¶ 13, 15.)

At 2:02:02 a.m., Officer Tittle made a "Cover/Assist Officer" "Call for Service" (*Id.* at ¶ 14.) Then, Officer Tittle, followed by Officer Brown, turned right out of Pucci's parking lot, traveling northbound on Tanglewood Avenue towards State Street. (*Id.* at ¶ 16.) After stopping at the flashing red light at the intersection and allowing a vehicle traveling westbound to pass (the only vehicle seen traveling westbound during the entire course of this incident), both officers turned left onto State Street. (*Id.* at ¶¶ 16, 17.) Prior to making the turn, Officer Tittle's dash-cam was activated at 2:02:47 a.m. (*Id.* at ¶ 17.) His POV camera was activated at approximately the same time. (*Id.*)

Officer Tittle activated his emergency lights and siren at 2:03:16 a.m., as he pulled over to the north side of State Street. (*Id.* at ¶ 18.) Officer Tittle then exited the vehicle and approached Lesowitz and James who were still walking towards the Holiday Inn. (*Id.*) His POV camera footage then shows Officer Tittle grab Lesowitz's right wrist and handcuff her. (*Id.*) Lesowitz claims she submitted to his authority without resistance, even though she received no explanation of arrest or recitation of her *Miranda* rights. (*Id.*)

After Lesowitz was arrested, she was placed in the backseat of Officer's Tittle's police cruiser. (*Id.* at ¶ 24.) She asked to be removed from the backseat and kicked the inside of the cruiser door. (*Id.*) In response, at 2:08:57 a.m., Officer Tittle "grabbed the handcuffed [Lesowitz], pulled her from the cruiser, slammed her on the back of the trunk, and put shackles on her ankles." (*Id.*) By this time, Officers Cioci and Johnson had arrived on the scene. (*Id.*) All three other officers present witnessed Officer Tittle's conduct; none intervened. (*Id.*)

At 2:11:20 a.m., Lesowitz was returned to the backseat of the squad car in handcuffs and leg restraints. (*Id.* at ¶ 25.) The rear dash-cam then shows Officer Cioci enter the backseat and place Lesowitz in a chokehold. (*Id.*) Lesowitz "can be heard gasping for air and moments later can be heard saying, 'Stop choking me, stop choking me.'" (*Id.*) Officer Tittle witnessed this conduct, but did not intervene.[3] (*Id.*)

Ultimately, Lesowitz was charged with "Disorderly Conduct – Intoxication – Persistence" in violation of Ohio Revised Code Section 2917.11(A)(5). (*Id.* at ¶ 19.) As alleged in the complaint, the police report states the following:

> On 10/16/2015 Toni Lesowitz (defendant), was arrested in the 2300 block of W. State Street. Alliance, Stark County, Ohio, the defendant, while voluntarily intoxicated causing a condition that was placing herself in danger, she was found to be highly intoxicated and yelling in the parking lot of Pucci's restaurant, she was advised to continue on her way and stop yelling, she continued with a subject, Varlonous James Jr., who was going to help her walk to the Holiday Inn, while in the street she began yelling and pulling away from Mr. James, who was attempting to assist her out of the road where cars were coming westbound towards them. This was in the 2300 block of W. State Street. Alliance, Stark County, Ohio, a high speed roadway.
>
> When re-contact she was placed into handcuffs and was arrested for Disorderly Conduct by Intoxication with persistence. The defendant refused to provide information, and would only say she is a PhD at Mount Union. Additional charge of Obstructing Official Business was added. The defendant was transported to Stark County Jail on double bond for being from out of state.

(*Id.* ¶ 20.) Lesowitz alleges that the video evidence directly refutes this account of the events resulting in her arrest. (*Id.* at ¶¶ 21, 22.)

---

[3] While Lesowitz states facts regarding injuries she became aware of the following day, she can recall no *conduct* which resulted in those injuries. Without facts to suggest Officers Tittle and Brown, who are sued here, engaged in conduct that caused her injuries, these statements in the complaint are mere speculation and are immaterial to the motion before the Court.

4

## II. STANDARD

### A. Motion for Leave to Amend

Under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). But leave should be denied when it is apparent that the amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 383 (6th Cir. 1993)); *see also Kreipke v. Wayne State Univ.*, 807 F.3d 768, 782 (6th. Cir. 2015), *cert. denied*, 137 S. Ct. 617, 196 L. Ed. 2d 513 (2017).

### B. Rule 12(b)(6) Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true," to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially

plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief[.]'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). In such a case, the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [and the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 683 (citation omitted).

A complaint need not set down in detail all the particulars of a plaintiff's claim. However, "Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79 (This standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555); *see Gregory v. Shelby Cty.*, 220 F.3d 433, 446 (6th Cir. 2000) (the court should not accept conclusions of law or unwarranted inferences couched in the form of factual allegations). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (emphasis in original) (internal quotations marks, citation, and additional citations omitted), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001).

**III. DISCUSSION**

In the "re-amended complaint," Lesowitz seeks to assert § 1983 claims of false arrest and excessive force or failure to intervene with excessive force. While she asserts both claims against Officer Tittle, she seeks to assert only the excessive force or failure to intervene with excessive force claim against Officer Brown.

**A. False Arrest**

To succeed on a false arrest claim under § 1983, "a plaintiff must prove that the police lacked probable cause." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (citing *Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir. 1999)). "A police officer has probable cause if there is a 'fair probability' that the individual to be arrested has either committed or intends to commit a crime." *Fridley*, 291 F.3d at 872 (citations and internal quotation marks omitted). The officer's subjective state of mind bears no relevance to this inquiry. *Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004) (citations omitted). Instead, "[w]hether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Id.* at 152 (citation omitted). This "totality of the circumstances" determination is one generally left to a jury, "'unless there is only one reasonable determination possible.'" *Everson v. Leis*, 556 F.3d 484, 499 (6th Cir. 2009) (quoting *Fridley*, 291 F.3d at 872 (additional citation omitted)).

In this case, Lesowitz was arrested for disorderly conduct by intoxication with persistence. (Re-Amend. Compl. at ¶¶ 19, 20.) The Ohio Revised Code defines the charged offense as "recklessly caus[ing] inconvenience, annoyance, or alarm to another by… [c]reating a condition that is physically offensive to persons or that presents a risk of physical harm to

7

persons or property, by any act that serves no lawful and reasonable purpose of the offender." Ohio Rev. Code § 2917.11(A)(5).

Lesowitz claims that she was engaging in no such conduct. She alleges that the audio and video footage directly contradict statements made in the police report that she was yelling in the street and creating an unsafe condition by being in the street in the midst of oncoming traffic.[4] (Re-Amend. Compl. at ¶ 21, 22.) Based upon Lesowitz's allegations, she was merely walking back to her hotel along a nearly abandoned road at the time she was arrested. Taking her allegations as true, as the Court must at this stage, Lesowitz has set forth facts that plausibly suggest Officer Tittle arrested her without probable cause, and the claim of false arrest is not subject to dismissal under Rule 12(b)(6). Therefore, since the amendment would not be futile, leave to amend is granted as to this claim.

**B. Excessive Force**

"[C]laims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). The Fourth Amendment "reasonableness"

---

[4] Defendants argue that "Plaintiff does not allege she never pulled away from Mr. James or put herself in danger – only that the video failed to show this. This is insufficient to counter Officer Tittle's statement that Mr. James pulled her from the roadway while a car approached them." (Opp'n Re-Amend at 113.) But if Defendants sought to refute Lesowitz's account of the events informed by the contents of the video, Defendants could have pursued an argument based upon incorporation by reference of the videotape. *See In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014) ("[I]f a plaintiff references or quotes certain documents, or if public records refute a plaintiff's claim, a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion without converting the motion to dismiss into a Rule 56 motion for summary judgment.") (citation omitted); *see, e.g.*, *Bowens v. Aftermath Entm't*, 254 F. Supp. 2d 629, 639 (E.D. Mich. 2003) (The court denied application of Rule 10(c) "written instrument" incorporation to allow a defendant to introduce a videotape referred to in the complaint to refute claims made within the complaint. In reasoning, the Court denied incorporation, first, because it was a videotape rather than a "written instrument," and second, because it was not "determinative" of the plaintiff's claims. Therefore, the video was more consistent with evidence that would convert the motion to dismiss to a motion for summary judgment.). By approaching the issue in this manner, the Court could have considered the legal issue and perhaps any alleged inconsistency between Lesowitz's recitation of the videotape contents and the contents themselves. But since Defendants have not utilized this approach, but have essentially urged the court to make an improper credibility determination, the Court rejects this argument.

8

standard is one of objective reasonableness, asking "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

To determine whether the officer's conduct was reasonable, the totality of the circumstances must be considered, which "requires careful attention to the facts and circumstances of each particular case[.]" *Id.* at 396 (citation omitted). Factors that aid in this determination include: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight," *id.*; as well as "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley v. Hendrickson*, – U.S. –, 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015) (citing *Graham*, 490 U.S. at 396).

In this case, Lesowitz claims she was already handcuffed in the back of the squad car at the time Officer Tittle removed her from the vehicle and slammed her against the back of the vehicle to place "shackles" on her ankles. (Re-Amend. Compl. at ¶ 24.) After she was returned to the back of the squad car with "shackles" on her ankles and handcuffs on her wrists, Lesowitz alleges that Officer Cioci[5] entered the back of the car and put her in a chokehold. (*Id.* at ¶ 25.)

During both of the incidents, Lesowitz alleges that she was restrained and in the back of the squad car when the officers initiated their conduct. (*Id.* at ¶ 24). Lesowitz claims that she was not resisting arrest, nor was she a flight risk. Regardless of the fact that Lesowitz admitted to

---

[5] Officer Cioci is not a party to this case at this time. Before moving forward with this action, the parties are instructed to consider the issue of joinder to ensure all necessary parties are joined in this action.

"kick[ing] the inside of the cruiser door," she asserts that there is no indication that she was risk to anyone but herself. (*Id.*) Defendants do not argue that any factor favors their position other than "extent of the injury," relying on Lesowitz's statement that these two actions "were not the cause of her injuries (other than bruises to her arms)." (Re-Amend. Compl. at ¶ 26; Opp'n Re-Amend at 114-15.) But the "extent of the injury inflicted is not crucial to an analysis of a claim for excessive force in violation of the Fourth Amendment." *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 407 (6th Cir. 2009) (citation and internal quotation marks omitted). In sum, the conduct alleged in the complaint set forth a colorable claim regardless of the extent of the resulting injury of such force.

Further, because the conduct alleged establishes a plausible excessive force claim, both the officers engaging in the conduct along with those present at the time may be liable. Specifically, "[p]olice officers [sic] may be liable for failing to protect a person from excessive force if the officer knew or should have known that excessive force would or might be used, and the officer had both the opportunity and means to prevent the harm from occurring." *Kent v. Oakland Cty.*, 810 F.3d 384, 402 (6th Cir. 2016) (citing *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)). The primary inquiry is whether "one officer's act of excessive force occurs so rapidly that a second officer on the scene lacks a realistic opportunity to intervene and prevent harm." *Kent*, 810 F.3d at 402 (citations and internal quotation marks omitted).

Here, Lesowitz alleges that Officer Brown was present when Officer Tittle removed Lesowitz from the back of the vehicle. Additionally, it is alleged that Officer Tittle witnessed Officer Cioci enter the backseat of the vehicle and place Lesowitz in a chokehold. On the basis of these allegations, and at this stage of the proceedings, neither the claim of excessive force against Officer Tittle nor the failure to intervene claims against both Officers Tittle and Brown

are subject to dismissal. Thus, since amendment regarding this claim would not be futile, leave to amend is granted.

## IV. CONCLUSION

For the foregoing reasons, Lesowitz's motion for leave to amend is GRANTED. As such, Defendants' motion to dismiss is DENIED, as moot.

**IT IS SO ORDERED.**

Dated: August 21, 2018

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**