UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TONI E. LESOWITZ, | ) | CASE NO. 5:17-cv-2174 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| ROY TITTLE, et al., | ) | |
| DEFENDANTS. | ) | |

Before the Court is the motion to dismiss filed by defendants Roy Tittle ("Officer Tittle") and Kevin Brown ("Officer Brown"). (Doc. No. 27 ["Mot."].) Plaintiff Toni E. Lesowitz ("Lesowitz") filed her opposition (Doc. No. 31 ["Opp'n"]), and defendants filed a reply (Doc. No. 32 ["Reply"]). For the reasons discussed herein, defendants' motion to dismiss is DENIED.

## I. BACKGROUND[1]

This § 1983 action arises from events that occurred in the early morning hours of October 16, 2015, near Pucci's Restaurant ("Pucci's") at 2012 Tanglewood Avenue, Alliance, Ohio. (Doc. No. 25 (Re-Amended Complaint ["RAC"]) ¶ 8.) Around 1:30 A.M., Officers Tittle and Brown, of the Alliance Police Department, responded to a call concerning loud music coming from Pucci's. (*Id.*) Soon after arriving at the scene, Officer Brown cleared the call, reporting that Pucci's was "'closed and quiet.'" (*Id.*)

---

[1] These facts are taken from Lesowitz's re-amended complaint, the facts of which the Court must accept as true for purposes of analyzing defendants' motion to dismiss.

Around 2:01 A.M., while still parked in Pucci's parking lot, Officer Brown's point-of-view camera ("POV camera") recorded Officer Brown exiting his cruiser and approaching Lesowitz and her companion Varlonous James ("James"). (*Id.* ¶¶ 9–11.) Officer Brown's POV camera recorded Officer Tittle talking with Lesowitz and James. (*Id.* ¶ 12.) Lesowitz explained that she was staying at the Holiday Inn across the street on State Street. (*Id.*) During this exchange, Officer Tittle instructed Lesowitz and James to leave the premises, removed his handcuffs, shook his handcuffs at Lesowitz and James, and said, "Stop running your mouth and walk." (*Id.*)

After this exchange, Officer Brown's POV camera recorded Lesowitz and James crossing Tanglewood Avenue and walking towards the Holiday Inn on State Street. (*Id.* ¶ 13.) No vehicles were traveling in either direction on State Street as Lesowitz and James walk westbound along State Street and as they crossed to the north side of State Street. (*Id.* ¶¶ 13, 15.)

At approximately 2:03 A.M., Officer Brown's front dash-camera video recorded Officer Tittle reversing his vehicle and leaving Pucci's parking lot. (*Id.* ¶ 16.) Officer Brown entered his own cruiser and followed Officer Tittle. (*Id.*) Both vehicles made right-hand turns out of Pucci's parking lot, traveled north on Tanglewood Avenue, and stopped at a flashing red traffic signal at the intersection of Tanglewood Avenue and State Street before they both made left-hand turns on State Street towards the Holiday Inn. (*Id.*) As Officer Tittle pulled into the intersection, a vehicle was recorded traveling westbound on State Street. (*Id.*) This was the only vehicle seen traveling on State Street during the time of the alleged incident. (*Id.*)

At 2:03:16 A.M., Officer Tittle's cruiser's dash-camera video recorded him activating his emergency lights and sirens as he pulled over to the north side of State Street in front of Butler Rodman Park. (*Id.* ¶ 18.) Thereafter, Officer Tittle exited his crusier, walked around the rear of the vehicle, and approached Lesowitz and James, who were still walking westbound along State Street towards the Holiday Inn. (*Id.*) Officer Tittle then handcuffed Lesowitz. (*Id.*)

Alliance Police Department's Arrest Records indicate that Lesowitz was charged with disorderly conduct—intoxication—persistence and obstructing official business. (*Id*. ¶ 19.) The Alliance Police Incident/Offense Report signed by Officer Tittle and a reviewing supervisor stated:

> On 10/16/2015 Toni Lesowitz (defendant), was arrested in the 2300 block of W. State Street. Alliance, Stark County, Ohio, the defendant, while voluntarily intoxicated causing a condition that was placing herself in danger, she was found to be highly intoxicated and yelling in the parking lot of Pucci's restaurant, she was advised to continue on her way and stop yelling, she continued with a subject, Varlonous James Jr., who was going to help her walk to the Holiday Inn, while in the street she began yelling and pulling away from Mr. James, who was attempting to assist her out of the road where cars were coming westbound towards them. This was in the 2300 block of W. State Street. Alliance, Stark County, Ohio, a high speed roadway.
>
> When re-contact she was placed into handcuffs and was arrested for Disorderly Conduct by Intoxication with persistence. The defendant refused to provide information, and would only say she is a PhD at Mount Union. Additional charge of Obstructing Official Business was added. The defendant was transported to Stark County Jail on double bond for being from out of state.

(*Id.* ¶ 20.)

Upon arrest, Officer Tittle put Lesowitz in the back seat of his police cruiser. (*Id.* ¶ 24.) At approximately 2:08 A.M., two other Alliance police officers, Officers Cioci and Johnson, arrived on the scene. (*Id.*) Around this time, Lesowitz asked for the police cruiser's rear door to be opened and began kicking the inside of the police cruiser. (*Id.*) At 2:08:57 A.M., Officer Tittle's cruiser's rear dash-camera video captured Officer Tittle grabbing Lesowitz, pulling her from the cruiser, slamming her on the cruiser's trunk, and putting "shackles" on her ankles. (*Id.*)

3

At 2:11:20 A.M., Officer Tittle returned Lesowitz to the rear passenger-side seat of his police cruiser. (*Id.* ¶ 25.) Officer Tittle's cruiser's rear dash-cam video then captured Officer Cioci enter the cruiser through the rear driver-side door and place Lesowitz in a temporary choke hold. (*Id.*) Lesowitz could be heard gasping for air and moments later could be heard saying, "Stop choking me, stop choking me." (*Id.*)

At 2:35:40 A.M., Officer Tittle arrived at the Alliance Police Department with Lesowitz still in custody in the rear seat of Officer Tittle's cruiser. (*Id.* ¶ 28.) Until approximately 2:53 A.M., Officer Tittle's cruiser's dash-camera video and Officer Brown's POV camera recorded Lesowitz during her custody at the Alliance Police Department. (*Id.* ¶ 29.) During these recordings, Lesowitz appeared alert and conversive. (*Id.*) Around 2:53 A.M., Officer Brown manually turned off his POV camera even though Lesowitz was still in custody at the Alliance Police Department, leaving a gap of approximately fifty (50) minutes, for which there is no video documenting Lesowitz's custody at the Alliance Police Department. (*Id.* ¶¶ 30–31.)

When Officer Brown's POV camera was reactivated, Lesowitz was unconscious and slumped over in a restraint chair. (*Id.* ¶ 32.) Officer Brown roused Lesowitz who appeared incoherent, disoriented, and injured. (*Id.*)

Around 3:45 A.M., Lesowitz was led to Officer Tittle's cruiser for transport to the Stark Count Jail. (*Id.* ¶¶ 32–33.) The Stark Count Jail received Lesowitz around 4:05 A.M. (*Id.* ¶ 33.)

Lesowitz regained consciousness hours later in an individual holding cell feeling beaten and concussed. (*Id.* ¶ 34.) Lesowitz's symptoms included a severe headache, confusion, dizziness, fatigue, extreme sensitivity to light, amnesia, retrograde amnesia, and she could feel a large knot on the back of her head and intense pain in her back, leg, and foot. (*Id.*) Specifically, Lesowitz suffered trauma to the back of her head, the left side of her lower back, the top of her left foot (also

resulting in a broken toe), a cracked tooth on the right side of her mouth, and dislocation of her jaw. (*Id.* ¶ 36.) Lesowitz's injuries caused her to have amnesia for the events which led to her injuries. (*Id.* ¶ 35.) As a result, Lesowitz does not remember being arrested, transported to the Alliance Police Department, or arriving at the Stark County Jail. (*Id.*) Lesowitz was in the continuous custody of Officers Tittle and Brown from the time of her arrest at approximately 2:05 A.M. until her arrival at the Stark County Jail at approximately 4:05 A.M. (*Id.*)

In her re-amended complaint, Lesowitz alleges that Officer Tittle violated the Fourth and Fourteenth Amendments of the United States Constitution by falsely arresting Lesowitz and by either using excessive force to forcibly detain Lesowitz or by failing to intervene with the use of excessive force by other officers. (*Id.* ¶ 1.) Further, she alleges that Officer Brown violated the Fourth and Fourteenth Amendments of the United States Constitution by using excessive force to forcibly detain Lesowitz or by failing to intervene with the use of excessive force by other officers. (*Id.* ¶ 2.) Defendants seek dismissal of the re-amended complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The matter is fully briefed and ripe for the Court's review.

## II.     STANDARD OF REVIEW

In the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the sufficiency of the complaint is tested against the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Although this standard is liberal, Rule 8 still requires a complaint to provide the defendant with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,"

to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2) (second alteration in original)). In such a case, the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [and the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 683.

A complaint need not set down in detail all the particulars of a plaintiff's claim. However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79 (stating that this standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555); *see Gregory v. Shelby Cty.*, 220 F.3d 433, 446 (6th Cir. 2000) (finding courts should not accept conclusions of law or unwarranted inferences couched in the form of factual allegations). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (internal quotations marks

omitted), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001).

**III. DISCUSSION**

In their motion to dismiss, defendants claim that Lesowitz's has failed to properly state claims for false arrest, excessive use of force, and failing to intervene with the excessive use of force. (Mot. at 194.[2])

**A. False Arrest Claim**

In their motion to dismiss, defendants contend that plaintiff fails to demonstrate that Officer Tittle lacked probable cause to arrest her. (Mot. at 201.) The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV. A false arrest claim brought under the Fourth Amendment requires the plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff. *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005) (citing *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002)). "A police officer has probable cause if there is a 'fair possibility' that the individual to be arrested has either committed or intends to commit a crime." *Fridley*, 291 F.3d at 872 (internal quotation marks omitted) (quoting *Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir. 2001)). "A police officer determines the existence of probable cause by examining the facts and circumstances within his knowledge that are sufficient to inform 'a prudent person, or one of reasonable caution,' that the suspect 'has committed, is committing, or is about to commit an offense.'" *Fridley*, 291 F.3d at 872 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979)). "In general,

---

[2] All page number references are to the page identification number generated by the Court's electronic docketing system.

7

the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir.1995).

In this case, Lesowitz was arrested for disorderly conduct by intoxication with persistence. (RAC ¶¶ 19–20.) The Ohio Revised Code defines disorderly conduct as, "recklessly caus[ing] inconvenience, annoyance, or alarm to another by . . . [c]reating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender." Ohio Rev. Code. § 2917.11(A)(5).

Lesowitz claims that she was not engaging in any conduct that could evince her arrest for disorderly conduct by intoxication with persistence. Lesowitz alleges that the video recordings from the night of the incident directly contradict statements made in the police report that she was yelling in the street and creating an unsafe condition by being in the street in the midst of oncoming traffic. (RAC ¶¶ 21–22.) Based upon Lesowitz's allegations, she was merely walking back to her hotel with James along a nearly abandoned road at the time she was arrested.

Perhaps inspired by this Court's August 21, 2018 Memorandum Opinion (Doc. No. 15), defendants seek to incorporate the various video recordings from the night of the incident into their motion to dismiss because defendants believe the recordings demonstrate that Officer Tittle had probable cause to arrest Lesowitz for disorderly conduct and obstructing official business. In this Court's August 21, 2018 Memorandum Opinion, resolving plaintiff's motion for leave to amend her complaint (Doc. No. 13), the Court commented on defendants' decision not to attempt incorporating the video recordings from the night of the incident into defendants' opposition to plaintiff's motion to amend her complaint (Doc. No. 14). This Court did not rule whether the videos *could* be incorporated, but merely noted that it was a potential approach the defendants

could have attempted. Now faced with defendants' attempt to incorporate the videos in their motion to dismiss, the Court must decide whether incorporation is appropriate.

"Generally, at the motion-to-dismiss stage, a federal court may consider only the plaintiff's complaint." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014) (citing *Weiner v. Klais & Co.*, 108 F.3d 86, 88–89 (6th Cir. 1997)). However, the Sixth Circuit has recognized:

> [I]f a plaintiff references or quotes certain documents, or if public records refute a plaintiff's claim, a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the [motion to dismiss] without converting the motion to dismiss into a Rule 56 motion for summary judgment.

*Id.* at 466 (citing *Weiner*, 108 F.3d at 89).

Importantly, *In re Omnicare*, and the cases on which it relied, considered the incorporation of public *documents*. Other courts in the Sixth Circuit have followed *In re Omnicare* and allowed the incorporation of *documents*, but not "extraneous or evidentiary material that should not be attached to the pleadings." *E.g.*, *Bowens v. Aftermath Entm't*, 254 F. Supp. 2d 629, 640 (E.D. Mich. 2003) ("[T]he Court concludes that the DVD is the sort of 'lengthy exhibit[] containing extraneous or evidentiary material [that] should not be attached to pleadings.'" (emphasis omitted)); *see also, e.g.*, *Watermark Senior Living Retirement Cmtys., Inc. v. Morrison Mgmt. Specialists, Inc.*, 905 F.3d 421, 425–26 (6th Cir. 2018) (allowing incorporation of documents from other court proceedings). Likewise, other federal courts have found incorporation appropriate only for *documents* such as affidavits, letters, contracts, and loan documentation. *See, e.g.*, *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 453 (7th Cir. 1998) ("Historically, this Court has interpreted the term 'written instrument' . . . to include documents such as affidavits, and letters, as well as contracts, and loan documentation[.]" (citations omitted)); *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) ("While documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are *central*

9

to his claim, this is a narrow exception aimed at cases interpreting, for example, a contract." (internal quotation marks and citation omitted)); *Desert Palace, Inc. v. Khatchaturian*, No. 2:12-CV-00247-KJD-GWF, 2012 WL 2389628, at *1–2 (D. Nev. June 22, 2012) (denying incorporation of video recordings into defendant's motion to dismiss).

While defendants are correct that plaintiff references the videos in her re-amended complaint, there is insufficient information in the videos for the Court to determine—given the strict legal standard that applies at this stage of the proceedings—if there was probable cause for Lesowitz's arrest. Instead, the Court saves that analysis for summary judgment, when the parties may present additional facts to address what transpired on, and off, the videos.[3] *Kramer v. Midamco, Inc.*, No. 1:07 CV 3164, 2009 WL 3428822, at *1 n.2 (N.D. Ohio Oct. 20, 2009) ("[T]ime will tell if the actual evidence will support a finding in favor of [defendants] . . . but in a motion to dismiss, the weight, credibility, and sufficiency of the evidence are not at issue.").

Taking Lesowitz's pleaded facts as true, as required at the motion to dismiss stage, and given the incomplete nature of the videos provided by the defendants, the Court finds that Lesowitz's false arrest claim against Officer Tittle survives defendants' motion to dismiss. Defendants' motion to dismiss Lesowitz's false arrest claim against Officer Tittle is DENIED.

**B. Excessive Use of Force**

In their motion to dismiss, defendants also contend that plaintiff fails to identify "any conduct by [Officers] Tittle or Brown that could have caused [p]laintiff's injuries, much less be considered excessive under the law." (Mot. at 204.) "[C]laims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other

---
[3] For example, although in the video recordings you cannot see Lesowitz and James when they are crossing the street, Officer Tittle remarks multiple times during the video recordings that Lesowitz was in the middle of the street, pulling away from James.

10

'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks omitted). "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id*. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)).

> Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S. Ct. 1861, 1884, 60 L. Ed. 2d 447 (1979), however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Graham*, 490 U.S. at 396.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (internal quotation marks and citation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

In her re-amended complaint, Lesowitz claims she was already handcuffed in the back of the police cruiser at the time Officer Tittle removed her from the vehicle and slammed her against the trunk of the vehicle to place "shackles" on her ankles. (RAC ¶ 24.) While Lesowitz admits that she was "kick[ing] the inside of the cruiser door[,]" she alleges that she was neither resisting arrest nor attempting to flee. (*Id.*)

Defendants contend the video recordings from the night of the incident contradict Lesowitz's allegations and "demonstrate that [Lesowitz] was not slammed onto the rear of the cruiser[.]" (Mot. at 198.) For the reasons already discussed, this Court will not rule on this issue on motion to dismiss because this issue is better addressed on summary judgement.

Without relying on the videos, defendants contend Lesowitz's excessive force claims should be dismissed because Lesowitz alleges that being slammed on the trunk of the police cruiser was not the cause of her injuries (other than bruises to her arms). (Mot. at 205–06 (citing RAC ¶¶ 26, 36).) However, "a plaintiff may 'allege use of excessive force even where the physical contact between the parties did not leave excessive marks or cause extensive physical damage.'" *Morrison v. Bd. of Trs.*, 583 F.3d 394, 407 (6th Cir. 2009) (quoting *Ingram v. City of Columbus*, 185 F.3d 579. 597 (6th Cir. 1999)). The extent of the injury inflicted is not "crucial to an analysis of a claim for excessive force in violation of the Fourth Amendment[.]" *Baskin v. Smith*, 50 F. App'x 731, 737 n.2 (6th Cir. 2002). For these reasons, the Court will allow Lesowitz's excessive use of force claim against Officer Tittle to survive defendants' motion to dismiss.

Also, at this stage in the proceedings, the Court will allow Lesowitz's use of excessive force claim against Officer Brown to proceed. While the Court cannot detect the use of any excessive force in its review of the videos, the Court will not make a definitive ruling at this time. This determination is more appropriate on summary judgment, when the Court will have a more

fully developed record. Defendants' motion to dismiss as it pertains to Lesowitz's claims for excessive use of force against Officer Tittle and Officer Brown is DENIED.

### C. Failure to Intervene

In their motion to dismiss, defendants contend that "[p]laintiff has not sufficiently pled her claim for failure to intervene and protect from excessive use of force[,]" as it pertains to Officers Tittle and Brown. (Mot. at 207.) To establish a claim that defendants failed to intervene in the use of excessive force, plaintiff must show that the defendants "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'" *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)). The critical inquiry is whether the incident lasted long enough to give defendants the opportunity to perceive what was going on and intercede to stop it. *Id.* at 475 (citing among authority *Durham v. Nu'Man*, 97 F.3d 862, 868 (6th Cir. 1996)).

In her re-amended complaint, along with allegations that Officer Tittle slammed her onto the trunk of the police cruiser, Lesowitz alleges that while she was handcuffed in the back of the police cruiser, nonparty Officer Cioci entered the back of the vehicle and put Lesowitz in a "temporary choke hold" while Lesowitz gasped for air and exclaimed "Stop choking me, stop choking me." (RAC ¶ 25.) Lesowitz alleges that Officer Brown was present when Officer Tittle removed her from the cruiser and slammed her onto the trunk of the vehicle, and she alleges that Officer Tittle was present when nonparty Officer Cioci placed Lesowitz in a choke hold. (*Id.* ¶¶ 24–25.)

Defendants contend that these claims should be dismissed because they were not unreasonable excessive uses of force and because they were "brief and sudden so that any reasonable officer would not have any realistic opportunity to intervene." (Mot. at 207.) While in

13

the end, the evidence may bear this out, [4] this is a matter more properly addressed on summary judgment, at which time it may become clear whether there was insufficient time for the officers to intervene during either occurrence. As such, defendants' motion to dismiss as it pertains to Lesowitz's claims of failure to intervene with the excessive use of force is DENIED.

## IV. CONCLUSION

For the reasons set forth herein, defendants' motion to dismiss is DENIED.

**IT IS SO ORDERED**.

Dated: July 10, 2019

                                                           **HONORABLE SARA LIOI**
                                                           **UNITED STATES DISTRICT JUDGE**

---

[4] *See, e.g.*, *Amerson v. Waterford Twp.*, 562 F. App'x 484, 490 (6th Cir. 2014) (finding an officer had no opportunity to prevent two strikes to the plaintiff's head because the span of time for intervention "could not have been more than a few seconds"); *Wells v. City of Dearborn Heights*, 538 F. App'x 631, 640 (6th Cir. 2013) (finding no opportunity to prevent a knee strike and tasing where the acts were "rapid" and did not constitute an "extended string of abuses"); *Burgess*, 735 F.3d at 476 (finding no opportunity to prevent a "takedown" that lasted no more than ten seconds); *Kowolonek v. Moore*, 463 F. App'x 531, 539 (6th Cir. 2012) (finding that officers had no opportunity to stop a tasing that "could only have lasted for a fraction" of the entire altercation with police, which itself lasted only minutes); *Ontha v. Rutherford Cty.*, 222 F. App'x 498, 506 (6th Cir. 2007) (finding officer who was a passenger in a patrol car that ran over a fleeing suspect lacked opportunity to "implement preventative measures within a short time span of six to seven seconds"). The Court notes, however, that all these cases involved rulings in the district court on motions for summary judgment.