# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| TONI LESOWITZ, | ) | CASE NO. 5:17-cv-2174 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| | ) | |
| ROY TITTLE, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is the motion for summary judgment filed by defendants, Officer Roy Tittle ("Officer Tittle") and Officer Kevin Brown ("Officer Brown") (collectively, "defendants"). (Doc. No. 44, motion ["Mot."].) Plaintiff, Toni Lesowitz, filed a brief in opposition (Doc. No. 46, opposition ["Opp'n"]), and defendants filed a reply. (Doc. No. 47, reply ["Reply"].) For the reasons set forth herein, defendants' motion for summary judgment is granted and this case is dismissed.

## I.  FACTUAL BACKGROUND

### A.    Background

Toni Lesowitz ("Lesowitz") holds a doctoral degree in psychology. (Doc. No. 25, Re-Amended Complaint ("Compl.") ¶ 45[1].) In October 2015, Lesowitz—who was an adjunct faculty member at DePaul University in Chicago, Illinois—traveled to Alliance, Ohio to discuss the possibility of establishing a multi-disciplinary program at the University of Mount Union ("Mount Union") in User Experience, her area of expertise. (*Id.*) But in the early morning hours of October

---

[1] Facts alleged in the pleadings are set forth as background context only and are not afforded any weight for purposes of resolving the instant motion for summary judgement.

16, 2015, her visit to Ohio took a tragic turn. On that night, Lesowitz allegedly incurred numerous serious injuries, including a traumatic brain injury, lower back trauma, a broken toe, a cracked tooth, and a dislocated jaw. (*Id.* ¶¶ 35, 36, 40–44.) But Lesowitz does not recall "the events [that] led to her injuries." (*Id.* ¶ 35.) In fact, she does not "remember anything[,]" from the night in question. (Doc. No. 44-1, Deposition of Toni Lesowitz ["Lesowitz Dep."] at 90[2].) It is undisputed, however, that Lesowitz was arrested that evening by City of Alliance ("Alliance") Police Officer Tittle for Disorderly Conduct and Obstructing Official Business. (Doc. No. 44-2, Affidavit of Roy Tittle ["Tittle Aff."] ¶ 2.) The only knowledge Lesowitz has related to the events surrounding her arrest comes from viewing video captured on defendants' point-of-view ("POV") cameras. (Lesowitz Dep. at 90.) Defendants filed copies of the POV footage related to Lesowitz's arrest and booking on the docket. (*See* Doc. No. 28.)[3]

### B. Lesowitz's Arrest

Prior to her arrest, Lesowitz visited Pucci's Restaurant, located at 2012 Tanglewood Avenue, Alliance Ohio ("Pucci's"). (Lesowitz Dep. 92–93; Compl. ¶ 8.) While at Pucci's, Lesowitz met Varlonus James ("James"), a Pucci's employee. (Lesowitz Dep. at 92–93.) Lesowitz

---

[2] All deposition page numbers refer to the page number assigned to the transcript by the court reporter. All other record citations refer to the page identification number generated by the Court's electronic docketing system.

[3] Defendants manually filed 2 CDs with the Clerk of Court. The Clerk docketed both CDs as Doc. No. 28. One CD is labelled "Exhibit A" and purports to contain "dashcam video." Though "Exhibit A" contains numerous files, it appears to contain only three video files, all of which are clips from Officer Brown's POV camera. The videos document various interactions between the defendants and Lesowitz on the night in question. Video file 1502846-1 is Officer Brown's POV video documenting the events leading up to, and including, Lesowitz's arrest—this video is cited herein as ("Brown POV 1"). Video file 1502846-2 is Officer Brown's POV video documenting Lesowitz's arrival and booking at the Alliance Police Department—cited as ("Brown POV 2"). And video file 1502846-3 is Officer Brown's POV depicting the defendants' interactions with Lesowitz as she is released from a restraint chair at the Alliance Police Department, prior to being transported to the country jail—cited as ("Brown POV 3"). The second CD is labelled "Exhibit B" and contains two video clips of Lesowitz's arrest. Video file 1502846 is Officer Tittle's POV video documenting Lesowitz's arrest—this video is cited herein as ("Tittle POV"). The second video on Exhibit B is duplicative of Brown POV 1. Neither CD appears to contain any dashcam video.

spoke briefly to James—who was a stranger prior to this interaction—but Lesowitz wanted James to leave her alone. (*Id.* at 92.) The last thing Lesowitz recalls that evening is telling James that she could "get back to [her] hotel [herself]." (*Id.* at 93.) Based on the record before the Court, it is unclear what happened between the time Lesowitz told James to leave her alone, and her initial interaction with defendants.

At approximately 1:35 a.m., Alliance Police Officers Brown and Tittle responded to a report of loud music coming from Pucci's. (Compl. ¶ 8.) Approximately five minutes later, defendants cleared the call, noting that Pucci's was "closed and quiet." (*Id.*) At approximately 2:01 a.m., while still parked in the Pucci's parking lot, Officer Brown's POV camera recorded Officer Brown exiting his cruiser and approaching Lesowitz and James. (Brown POV 1 at 00:19–00:33.) As Officer Brown approached, Lesowitz and James were standing on the sidewalk talking to Officer Tittle. (*Id.* at 00:33–00:34.) Though it cannot be heard on video, Lesowitz allegedly told Officer Tittle that she was "staying at the Holiday Inn across the street." (Compl. ¶ 12.) Officer Tittle is heard urging Lesowitz to "start walking," as James pleads with Lesowitz to continue walking. (Brown POV 1 at 00:33–00:51.) After failing to heed numerous verbal directives to "go" and "keep walking"—which culminates in Officer Tittle removing his handcuffs from his utility belt—Lesowitz ultimately complies and starts walking toward her hotel. (*Id.* at 00:33–00:50.) As she crosses a side street, Lesowitz stumbles and braces herself against James. (*Id.* at 00:51–00:59.)

Officers Tittle and Brown—still standing in the Pucci's parking lot—voice concern that they may have further interactions with Lesowitz later that evening. Officer Tittle tells Officer Brown, "we're going to get a call from Holiday Inn [upon Lesowitz's arrival,] guarantee it." (*Id.* at 1:18–1:21.) Officer Brown responds, "that's what I was just thinking, they are going to get there

and be fighting … in the middle of the hallway, or she's going to hit [James] right here in front of us." (*Id.* at 1:20–1:27.)

As Lesowitz and James continue to walk away from the officers, Lesowitz begins yelling and pulling away from James. (Tittle Aff. ¶ 3.) From the parking lot, the defendants continue to observe Lesowitz and James walk on a sidewalk that runs parallel with West State Street. (Brown POV at 1:34–1:39.) Lesowitz and James then leave the sidewalk and begin to cross West State Street (Brown POV 1 at 1:44–1:46.), creating a dangerous condition because cars were operating on the street. (Tittle Aff. ¶ 3.) As the couple entered the street, Officer Brown stated, "look both ways before you…." Officer Brown did not finish his sentence before the defendants simultaneously walked to their respective patrol cars to pursue Lesowitz and James. (Brown POV at 1:44–1:52.)

The defendants exit the parking lot, and head toward Lesowitz and James. (*Id.* at 1:49–2:16.) As the officers wait to turn left onto West State Street—Officer Tittle in the lead, followed by Officer Brown—James can be heard yelling something, as a pickup truck traveling on West State Street heads toward the couple. (*Id.* at 2:17–2:23.) Once the pickup passes, the defendants turn left onto West State Street and Officer Tittle activates his lights and siren. (*Id.* at 2:23–2:34.) Officer Tittle then exits his patrol car, walks up behind Lesowitz (who, by this time, has crossed West State Street and is on the opposite sidewalk), and places handcuffs on her wrists. (*Id.* at 2:36–2:57.) As Officer Tittle escorts Lesowitz to his patrol car, James tells Officer Brown "I told her to chill out, right." (*Id.* at 3:23–3:26.) James immediately leaves the scene upon being told that he was not under arrest. (*Id.* at 3:37–3:47.) Lesowitz was initially arrested for disorderly conduct, and a charge of obstructing official business was later added. (Tittle Aff. ¶ 2.)

4

After getting Lesowitz to his patrol car, Officer Tittle attempts to get her to "have a seat" in the back the car for approximately one minute, as Lesowitz yells that she is "with the fucking university" and insists that Officer Tittle is "going to get sued." (Tittle POV at 1:28–2:23; Brown POV 1 at 3:33–4:20.) After she is secured in the back of police cruiser, Lesowitz resumes her verbal abuse of the officers, leading Officer Tittle to inquire "what are you on other than alcohol?" (Tittle POV at 2:53–3:15.) Unable to locate her identification, Officer Tittle asks Lesowitz her name and where she's from. (Brown POV 1 at 4:44–5:45.) Lesowitz responds "fuck you, bitch." (*Id.* at 5:56–5:59.) Officer Tittle advises Lesowitz that she is under arrest for "disorderly conduct by intox and obstructing." (*Id.* at 6:03–6:07.) Lesowitz's incoherent and expletive-laden tirade continues throughout her time in the back of the police cruiser. (*Id.* at 4:51–8:04.) At one point, Lesowitz begins kicking the back of the police cruiser. (*Id.* at 8:01–8:05.) In response, Officer Tittle removes Lesowitz from the back of the car and leans her over the trunk of the police cruiser, while Officer Cioci—another Alliance police officer who recently arrived at the scene—assists in placing a cloth hobble around Lesowitz's legs to prevent further kicking. (*Id.* at 8:06–9:47.)

With the hobble in place around Lesowitz's legs, the officers attempt to place her back in the patrol car, but Lesowitz repeatedly refuses the officers' directives to "have a seat" and to "slide [her] feet in [the car]." (*Id.* 10:03–11:13.) Once Lesowitz is finally seated, Officer Tittle and Officer Cioci attempt to secure a seatbelt around her. (*Id.* at 11:14–11:23.) Officer Tittle, who is outside the passenger side of the car, can be seen grabbing the seatbelt and handing it to Officer Cioci, who is now inside the back-driver's side of the cruiser. (*Id.* 11:15–11:19.) Lesowitz then leans forward to yell that the officers are "fucking gangsters." (*Id.* at 11:20–11:23.) Officer Cioci is then seen pushing Lesowitz back in her seat using her left hand while she buckles the seatbelt with her right hand. (*Id.* at 11:23–11:30.) Just as the seatbelt is fastened, Lesowitz says "you're

5

choking me," to which both Officer Tittle and Officer Cioci both respond, "no one's choking you." (*Id.* at 11:29–11:31.)

With Lesowitz once again secured in the back of cruiser—and as the officers wait on dispatch to confirm Lesowitz's identity and determine whether Lesowitz actually works for Mount Union—Officer Tittle discusses the events leading to Lesowitz's arrest with newly-arrived officers, stating "I was just going to [release] her back to [James] but he took off … [I] was going to [tell James] hey get her in her [hotel] room, but she started acting like this and [James] took off." (*Id.* at 13:27–13:37.) Officer Tittle told the officers "I thought for sure [Lesowitz] was going to get hit by a car." She was "in the middle of the street and she's like pulling from [James] and [James told Lesowitz] come on, you're in the middle of the street. And here come cars. I'm like, we [have] to do something, she's going to get hurt." (*Id.* at 13:59–14:18.)

As another officer arrives at the scene (five officers in total), Lesowitz continues to scream in the back of the police car and Officer Tittle explains to the newly-arrived officer, "we've all been super nice to her and she won't calm down at all. I think maybe we need to take her to the hospital, she's on something else other than alcohol." (*Id.* at 17:24–18:01.) The officers wait at the scene for over fifteen minutes while dispatch attempts to contact Mount Union to confirm Lesowitz's identity and determine whether there is someone to whom they can release Lesowitz. (*Id.* 11:56–27:28; 21:15–21:25 ["forty-two headquarters, can you recontact [Mount Union] security, see if they can contact a Dean by the first name of Patricia or Pat and see if she can confirm who [Lesowitz] is and if she can come and get [Lesowitz]"].) Officer Tittle then tells the other officers, "well, if [dispatch] can't get ahold of anybody [from Mount Union] we'll have no choice but to take her to [the] county [jail]." (*Id.* at 26:52–26:55.) Without anyone to whom they

6

can release Lesowitz, Officer's Tittle and Brown then leave the scene to book Lesowitz at the Alliance police department before taking her to the county jail. (*Id.* at 27:28–27:40.)

### C.     Booking Lesowitz at Alliance Police Department

There is no video footage in the record showing Officer Tittle transporting Lesowitz to the Alliance police department for booking. Officer Brown's POV footage resumes with Officer Tittle in the police department garage. (Brown POV 2 at 00:32–00:41.) As Officer Brown walks toward the police cruiser, Lesowitz is still in the back of Officer Tittle's car. Officer Tittle is standing outside the passage side of the cruiser talking to Lesowitz through the open rear-passenger door; Lesowitz continues to yell at the officers. (*Id.* at 2:11–2:44.) Officer Tittle tells Officer Brown, "if she calms down, I'll give her a ride back out to the Holiday Inn, but if she keeps acting like this, she has to go to [jail]." (*Id.* at 3:09–3:16.) After refusing verbal directives to get out of the car for over a minute, Lesowitz finally exits the cruiser and walks from the garage and into the police department without incident. (*Id.* at 4:46–6:47.)

In the booking area, defendants remove the hobble from Lesowitz's legs (*id.* at 6:53–7:01), remove her jewelry (*id.* at 6:55–11:59), and secure Lesowitz in a restraint chair (*id.* at 13:19–13:34). Officer Tittle explains that Lesowitz needs to be placed in the restraint chair because she is "dangerous" in her "intoxicated state." (*Id.* at 13:11–13:17.) Throughout the booking process, Lesowitz continues to scream at the officers. (*See e.g. id.* at 8:32–8:40 ["Oh, fuck man, I'm getting out of here, you're gangsters. I don't need this shit, fuck you, fuck you."].) At the conclusion of Brown POV 2, defendants are seen walking into an office—adjacent to where Lesowitz is sitting—to do paperwork. Officer Tittle tells Officer Brown that he has to take Lesowitz to the Stark County Jail because he "can't get her to calm down to give [him] information…." (*Id.* at 13:37–13:57.) Lesowitz can be heard yelling "oh, fucking you calm down…." (*Id.* at 13:58–14:08.)

### D.    Taking Lesowitz to Jail

Officer Brown's POV 3 video begins with Officer Brown leaving the aforementioned office and walking toward Lesowitz, who is hunched over in the restraint chair. (Brown POV 3 at 00:12–00:22.)[4] Officer Brown unlocks one of the chair's restraints. (*Id.* at 00:40–00:42.) Officer Tittle removes another strap while attempting to rouse Lesowitz, saying "good morning, wake up, wake up" (*id.* at 00:48–00:52). Lesowitz wakes and speaks to the officers in a whisper. (*Id.* at 1:13–1:25). For over one minute, Officer Brown ask Lesowitz to stand up, before he finally helps her out of the chair. (*Id.* at 1:13–2:28.) Other than inadvertently stumbling into a door, Lesowitz walks to, and sits in the back of, the police car without incident. (*Id.* at 2:29–3:09.) It is presumed that Lesowitz is then transported to the Stark County Jail; there is no video of the transport. (*See* Tittle Aff. ¶ 8.)

### E.    Lesowitz's Injuries and Lawsuit

As mentioned above, Lesowitz has no independent recollection of the events leading to her arrest on October 16, 2015. (Lesowitz Dep. at 90.) She simply alleges that she suffered numerous severe injuries and woke up in the Stark Country Jail hours after her arrest "feeling beaten and concussed…." (Compl. ¶¶ 34–36.) Lesowitz attributes her injuries to defendants. (*Id.* ¶ 2.) Lesowitz does not know when the injuries were sustained, but she claims that they cannot "be explained by being slammed on the back of the cruiser or choked[,]" and, therefore, she believes the injuries must have been sustained "during the gap in video that occurred between approximately 2:53 AM at 3:45 AM[,]" while in defendants' custody. (*Id.* ¶¶ 36, 48.) Lesowitz filed this action pursuant to 42 U.S.C. § 1983 against defendants in their "official and personal

---

[4] It is unclear how much time passed between the end of Brown POV 2 and the beginning of Brown POV 3.

capacities….” (*Id.* ¶¶ 51–58.) She claims that Officer Tittle violated the Fourth and Fourteenth Amendments when he “seized [her] without probable cause [and] either used excessive force, or failed to intervene in excessive force used during [her] arrest.” (*Id.* ¶ 52.) Lesowitz’s sole claim against Officer Brown is that he used excessive force (or “fail[ure] to intervene in excessive force”). (*Id.* ¶ 56.)

Defendants have moved for summary judgment claiming generally that Lesowitz cannot “demonstrate any facts which tend to” support her claims. (Mot. at 274.) Specifically, regarding her false arrest claim, defendants argue that Lesowitz has “fail[ed] to demonstrate that [Officer] Tittle lacked probable cause to arrest her.” (*Id.* at 281.) Regarding Lesowitz’s excessive force claims, defendants argue there is no evidence in the record to suggest that defendants’ conduct “could have caused [Lesowitz’s] injuries” (*id.* at 284), either at the scene of the arrest or while in defendants’ custody (*id.* at 284–88).

In her opposition brief, Lesowitz does not cite to any particular parts of the record—as required by Rule 56. Instead, she states only that the “video itself included as part of the defendant’s [sic] motion provides the view of the night in question, unshaded by the different memories of the litigants.” (Opp’n at 302.)

In reply, defendants claim, *inter alia*, that Lesowitz has “provided no evidence or analysis that … demonstrates that [d]efendants either used excessive force or failed to intervene when another officer used excessive force.” (Reply at 310–11.) For the reasons outlined below, defendants are entitled to summary judgment on all of Lesowitz’s claims.[5]

---

[5] Defendants’ motion for summary judgment suggests that defendants are entitled to summary judgment, in part, on the basis of qualified immunity. (*See generally* Mot.) As outlined in the Court’s previous Memorandum Opinion and Order, while considering the instant motion, the Court noticed that defendants failed to file a timely answer following the Court’s denial of defendants’ motion to dismiss. (*See* Doc. No. 56.) The Court brought the deficiency to the parties’ attention. (*See* Minutes of proceedings dated June 4, 2020.) In her opposition to defendants’ motion for leave to file

## II.   STANDARD OF REVIEW

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991). But in cases "'where the police dash-cam video[s] . . . depict[] all of the genuinely disputed facts,' . . . [courts] 'view[] the facts in the light depicted by the videotape[s].'" *Rudlaff v. Gillispie*, 791 F.3d 638, 639 (6th Cir. 2015) (first quoting *Standifer v. Lacon*, 587 F. App'x 919, 920 (6th Cir. 2014); then quoting *Scott v. Harris*, 550 U.S. 372, 380–81, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (alterations in original)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d

---

an answer, Lesowitz suggested that defendants waived the defense of qualified immunity by not asserting it earlier in this case. But as the Court noted its Memorandum Opinion and Order granting defendants' motion for leave to file an answer, "[a] plain reading of defendants' motion for summary judgment indicates that, in addition to asserting qualified immunity, defendants challenge the substance of Lesowitz's claims." (Doc. No. 56 at 350–51.) As outlined below, defendants are entitled to summary judgement based on the the substance of Lesowitz's claims, and, as such, the Court need not consider whether defendants waived qualified immunity.

202 (1986). Determining whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict[.]" *Id*. at 252.

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co*., 926 F.2d 559, 561 (6th Cir. 1991). The party opposing summary judgment may not rely on the pleadings, but must present evidence supporting the claims asserted by the movant. *Banks v. Wolfe Cty. Bd. of Educ*., 330 F.3d 888, 892 (6th Cir. 2003); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial).

Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient; there must be evidence upon which a jury could reasonably find for the non-movant. *Bell v. Ohio State Univ*., 351 F.3d 240, 247 (6th Cir. 2003) (quotation marks and citation omitted). Rule 56 further provides that "[t]he court need consider only" the materials cited in the parties' briefs. Fed. R. Civ. P. 56(c)(3); s*ee also Street v. J.C. Bradford & Co*., 886 F.2d 1472, 1479–80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine

11

issue of material fact.") (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

## III.  LAW AND ANALYSIS

As an initial matter, the Court must address the sufficiency of Lesowitz's opposition. As mentioned above, Lesowitz's opposition brief does not contain a single citation to any Rule-56-type evidence; instead, she states simply that the officers' POV video, as filed by defendants, provides the best "view of the night in question[.]" (Opp'n at 302.) Lesowitz has supplied no affidavit nor any unsworn declaration under penalty of perjury pursuant to 28 U.S.C. § 1746. Her re-amended complaint is not verified (nor was the original complaint) and, therefore, cannot serve as an opposing affidavit sufficient to rebut the defendants' summary judgment motion. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (citing *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992) (allegations in a verified complaint "have the same force and effect as an affidavit" for purposes of responding to a motion for summary judgment)).

Lesowitz provides no citations to any particular parts of the record, and apparently expects the Court to search the videos for genuinely disputed facts. (*See* Opp'n at 302.) But a party opposing summary judgment is required to cite to *specific* evidence in the record that creates a factual dispute. *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 378–79 (6th Cir. 2007). The Court is not required to scour the record in search of evidence to support a party's opposition to summary judgment. *See Abdulsalaam v. Franklin Bd. of Comm'rs*, 637 F. Supp. 2d 561, 576 (S.D. Ohio 2009); *see also AES-Apex Emp'r Servs., Inc. v. Rotondo*, 924 F.3d 857, 866 (6th Cir. 2019) ("[C]asting only 'metaphysical doubt' is insufficient to survive summary judgment.") (citation omitted).

With that in mind, the Court turns to the individual arguments raised by the defendants.

A.     **Official Capacity Claims**

Lesowitz claims to be suing defendants in both their individual capacities and their official capacities as Alliance police officers. A claim against a defendant in his official capacity "is, in all respects other than name, to be treated as a suit against the entity." *Spithaler v. Smith*, 803 F. App'x 826, 829 (6th Cir. 2020) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)).

It is well-established that a municipality—here, Alliance—cannot be held liable for civil rights violations under § 1983 solely on the basis that it employed a tortfeasor. "[I]n other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Instead, a local government may be liable under § 1983 only where its own "official policy or custom actually serves to deprive an individual of his or her constitutional rights." *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006). But Lesowitz has failed to allege any facts, much less cite to any record evidence, sufficient to show that an "official policy or custom" of Alliance caused a deprivation of her constitutional rights. In fact, her "official capacity claim" is limited to the case caption on her re-amended complaint that lists defendants "[i]n both [their] official and personal capacities[.]" (*See* Compl. at 167.)

This case has been pending for nearly three years. Lesowitz has had adequate opportunity to conduct discovery and develop any official-capacity claims she intended to assert. She has failed to do so. The Court finds that Lesowitz has abandoned her official-capacity theory and those claims are dismissed. *See Weathers v. Loumakis*, No. 2:15-cv-0027, 2017 WL 4038401, at *2 (D. Nev. Sept. 13, 2017) (holding that a plaintiff "abandon[ed] his official-capacity theory" when plaintiff failed to provide any evidence to support such a claim).

13

Moving to Lesowitz's personal-capacity claims against defendants. Lesowitz asserts two causes of action against Officer Tittle, false arrest and "either excessive use of force … or failure to intervene in the use of excessive force…." (Compl. at 188.) Lesowitz asserts one claim against Officer Brown, "excessive use of force … or fail[ure] to intervene in the use of excessive force…." (*Id.* at 189.) The Court will examine each of these in turn.

### B.      False Arrest Claim Against Officer Tittle

Officer Tittle is entitled to summary judgment on Lesowitz's false arrest claim. To sustain a claim for false arrest under § 1983, a plaintiff must prove that the arresting officer lacked probable cause to arrest her. *Fineout v. Kostanko*, 780 F. App'x 317, 327–28 (6th Cir. 2019) (citing *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005)). Probable cause exists where "'the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense.'" *Atkins v. Twp. of Flint*, 94 F. App'x 342, 347 (6th Cir. 2004) (quoting *Diamond v. Howd*, 288 F.3d 932, 936–37 (6th Cir. 2002)).

Lesowitz's was initially arrested for disorderly conduct in violation of Ohio Rev. Code § 2917.11 which states, in relevant part "[n]o person shall recklessly cause inconvenience, annoyance, or alarm to another by … [c]reating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property[.]" Ohio Rev. Code  § 2917.11(A)(5). Lesowitz was arrested "because while intoxicated she caused a condition that was placing herself in danger. While in the street at the 2300 block of West State Street, she began yelling and pulling away from [James] while cars were operating on the street." (Tittle Aff. ¶ 3.) Lesowitz has put forth no evidence to suggest otherwise. The facts surrounding Lesowitz's arrest are not genuinely in dispute, they are captured on the officers' POV video, and "where there is no dispute as to what

14

facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court." *Walczyk v. Rio*, 496 F.3d 139, 157 (2nd Cir. 2007); *see Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (the existence of probable cause in a § 1983 action is a question for the court when there is only one reasonable determination possible). The undisputed facts in this case, as depicted in the POV video, show that Lesowitz's arrest was supported by probable cause.

Prior to her arrest, Lesowitz is seen talking to Officer Tittle. (Brown POV 1 at  00:30–00:46). Officer Tittle instructs Lesowitz to "go" and "start walking [to her hotel]" numerous times. (*Id.* at 00:33–00:50.) Lesowitz does not comply. After, Officer Tittle removes handcuffs from his belt, Lesowitz turns to walk away. (*Id.* at 00:46–01:05.) She stumbles and braces herself against James. (*Id.*) Defendants continue to observe Lesowitz and James from the Pucci's parking lot. (*Id.* at 00:58–1:46.) As the couple enters West State Street, Officer Brown says "look both ways before you …" and the officers simultaneous walk to their police cars to pursue the couple. (*Id.* at 1:42–1:52.) As the defendants were waiting to turn onto West State Street, a pickup truck is seen heading toward Lesowitz and James. (*Id.* at 2:20–2:26.) Indeed, Officer Tittle stated, "I thought for sure [Lesowitz] was going to get hit by a car." She was "in the middle of the street and she's like pulling from [James] and [James told Lesowitz] come on, you're in the middle of the street. And here come cars. I'm like, we [have] to do something, she's going to get hurt." (*Id.* at 13:59–14:18.) In short, Lesowitz was arrested for disorderly conduct because she was intoxicated and placed herself in danger by struggling with James in the street while cars were operating. (Tittle Aff. ¶ 3.) The Court finds that the uncontroverted evidence shows that Lesowitz's arrest was supported by probable cause.

In her opposition brief, Lesowitz does not appear to dispute that there was reasonably trustworthy information sufficient to warrant Officer Tittle to believe that Lesowitz violated Ohio Rev. Code. § 2917.11 (Disorderly Conduct). (Opp'n at 302–03.) Instead, Lesowitz introduces a new theory, claiming that "the only disorderly conduct that [Lesowitz] could reasonable [sic] be believed to have committed prior to the arrest was of the minor misdemeanor variety[,]" and "[p]ursuant to [Ohio Rev. Code §] 2935.26 … Lesowitz was required to be served via summons and not arrested [for committing a minor misdemeanor offense]." (*Id.* at 303.) Lesowitz is partly correct. Under Ohio law, disorderly conduct is a minor misdemeanor unless the offense is committed under certain specified conditions—such as if the "offender persists in disorderly conduct after reasonable warning or request to desist." Ohio Rev. Code § 2917.11(E)(2) & (3)(a). And under Ohio law, "when a law enforcement officer is otherwise authorized to arrest a person for the commission of a minor misdemeanor, the officer shall not arrest the person, but shall issue a citation," unless certain specified conditions exist—such as, for example "[t]he offender cannot or will not offer satisfactory evidence of [her] identity." Ohio Rev. Code § 2935.26(A)(2). So, according to Lesowitz, Officer Tittle violated § 2935.26(A) by arresting Lesowitz rather than issuing her a citation.

Even if Lesowitz is right—and her disorderly conduct violation did not rise above the minor misdemeanor level, and none of the specified exceptions apply, which the Court need not decide—"the Fourth Amendment does not forbid warrantless arrests for minor misdemeanors." *Synek v. Brimfield Twp.*, No. 5:11-cv-0774, 2012 WL 4483806, at *8 (N.D. Ohio Sept. 27, 2012) (quotation marks and citation omitted). And even if Officer Tittle violated § 2935.26(A) by not issuing Lesowitz a citation, "'[t]he violation of a right created and recognized only under state law is not actionable under § 1983.'" *Id.* (quoting *Harrill v. Blount Cty.*, 55 F.3d 1123, 1125 (6th Cir.

16

1995)). That is so because "'Ohio's requirement that an individual may not be taken into custody for committing a minor misdemeanor is greater that the requirements of the Fourth Amendment.'" *Id.* (quoting *Hall v. Vill. of Gratis*, No. 3:07-cv-0351, 2008 WL 4758693, at *8 (S.D. Ohio Oct. 27, 2008); *see also Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S. Ct. 1536, 149 L. Ed. 2d 549 (2001) (holding "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender[]"). Lesowitz has failed to show that Officer Tittle lacked probable cause to arrest her—even if the offense for which she was arrested was a minor misdemeanor— and, as such, Officer Tittle is entitled to summary judgment on Lesowitz's false arrest claim.

## C.      Fourteenth Amendment Excessive Force Claim

"[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (emphasis omitted).

Here, Lesowitz was a "free citizen" when the arrest occurred. The Fourteenth Amendment does not apply to this situation, except to the extent it makes the Fourth Amendment applicable to the states. *See Mapp v. Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961).

Therefore, to the extent the Lesowitz's excessive force causes of action are premised upon the Fourteenth Amendment, defendants are entitled to summary judgment and the same is granted.

## D.      Fourth Amendment Excessive Force Claims

The precise nature of Lesowitz's excessive force claims are somewhat unclear. In her complaint, Lesowitz asserts that defendants' actions during her arrest, as seen in the videos, "were not the cause of her injuries…." (Compl. ¶ 26.) According to Lesowitz, defendants' actions as seen

17

on the video simply "show the officers' propensity to act aggressively, [or] potentially use excessive force at a later point in time, and to tolerate the aggressive and/or excessive force of other involved officers." (*Id.* ¶ 26.) In her opposition brief, however, Lesowitz appears to limit her excessive force claims to two specific instances of alleged force that occurred during her arrest: (1) an alleged "chokehold" and (2) Officer Tittle "slamming … [Lesowitz] on the back of the cruiser." (Opp'n at 303.) Due to the ambiguous and contradictory nature of Lesowitz's excessive force claims, the Court will examine whether defendants used excessive force (or failed to intervene in the use of excessive force) during the course of Lesowitz's arrest (the alleged "chokehold" and "slam" on the truck) and whether defendants "use[d] excessive force at a later point in time…." (Compl. ¶ 26.)

### 1.    Excessive Force Claims at the Time of Lesowitz's Arrest

Defendants are entitled to summary judgment on Lesowitz's claim that they used excessive force, or failed to intervene with the use of excessive force, during the course of Lesowitz's arrest. Lesowitz cites to two instances of force that she claims constitute excessive force: (1) when Officer Tittle removed Lesowitz from the cruiser and allegedly "slamm[ed]" her against the trunk to "hobble" her legs and (2) when Officer Cioci (a non-party) allegedly put Lesowitz in a "chokehold." (Opp'n at 303.)

### a)    Slamming Lesowitz onto the Trunk of the Car

Defendants are entitled to summary judgment on Lesowitz's claims that Officer Tittle used excessive force when he "slammed" her against the police car. "[A] free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of [her] person . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard[.]" *Graham*, 490 U.S. at 388. "[T]he 'reasonableness' inquiry in an

18

excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. "This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002) (citing *Graham*, 490 U.S. at 396). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citation omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (internal citations and quotation marks omitted). "[T]he question of whether [an officer's] conduct was 'objectively reasonable' is a pure question of law for us, as judges, to decide." *Standifer*, 587 F. App'x at 924 (emphasis removed and citation omitted).

In their motion for summary judgment, defendants contend that Lesowitz "has no evidence, and has not produced any … testimony that the action of placing [Lesowitz] onto the back of the cruiser was [an excessive use of force]." (Mot. at 285.) On this point, defendants are correct. Lesowitz simply makes the blanket allegation that the "force was not reasonable…." (Opp'n at 304.) The evidence before the Court, which is not in dispute, conclusively shows that removing Lesowitz from the back of the car and pushing her against the trunk while a hobble was placed around her legs, was objectively reasonable under the circumstances. *See Lockett v. Donnellon*, 38 F. App'x 289, 292 (6th Cir. 2002) (upholding district court's grant of summary judgment when "the actions of [the defendant officers] were objectively reasonable").

Lesowitz does not dispute that, at some point after being placed in the back of Officer Tittle's cruiser, she began kicking the inside door of the cruiser. (*See* Lesowitz Dep. at 104–05.)

19

The video confirms that Lesowitz yells "come on bitch, open the fucking door" before seven loud "thuds" can be heard coming from the back of the cruiser. (Brown POV 1 at 7:57–8:06.) Officer Tittle opens the cruiser's back door, pulls Lesowitz out of the car by her arm, pushes her against the trunk of the vehicle, and tells Lesowitz to "stop kicking." (*Id.* 8:06–8:11.) Officer Tittle holds Lesowitz against the car until a hobble is placed around Lesowitz's legs. (*Id.* at 8:12–9:39.) Officer Tittle's actions, in removing Lesowitz from the car and placing her against the trunk of the vehicle, were necessitated by Lesowitz's kicking the inside of the cruiser, risking damage to the car and injury to herself. And by this time, Lesowitz had demonstrated a propensity for aggression toward the officers and had repeatedly refused their verbal commands. Under the circumstances, it was reasonable for Officer Tittle to remove Lesowitz, who was intoxicated and highly agitated, from the vehicle to prevent her from injuring herself. To the extent Lesowitz believes Officer Tittle acted a bit too forcefully, there can be no doubt that such force did not rise to the level of a Fourth Amendment violation. *See Graham*, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary … violates the Fourth Amendment."). And in this case, the Court has the benefit the officer's body cams, which captured the incident, and the footage does not support Lesowitz' excessive force claim. Under the circumstances confronting him, Officer Tittle's actions were objectively reasonable and, thus, he is entitled to summary judgment on Lesowitz's excessive force claim related to this incident.

Because the force used in removing Lesowitz from, and pushing her against, the police cruiser was objectively reasonable under the circumstances, there is no Fourth Amendment violation. And where there is no underlying constitutional violation, a failure to intervene claim—which is inherently contingent upon the underlying constitutional violation—cannot stand. *Matthews v. City of N.Y.*, 889 F. Supp. 2d 418, 443–44 (E.D.N.Y 2012) ("[T]he failure to intervene

20

claim is contingent upon the disposition of the primary claims underlying the failure to intervene claim."). As such, Officer Brown is entitled to summary judgment on Lesowitz's failure to intervene claim premised on "slamming" Lesowitz on the police cruiser.

b)  The Alleged "Chokehold"

There is no evidence properly before the Court to indicate that any officer placed Lesowitz in a "chokehold." In her complaint, Lesowitz alleges that "Officer Cioci place[d] [her] in a temporary choke hold." (Compl. ¶ 25.) But, as mentioned above, allegations are no longer sufficient at the summary judgment stage. In the face of a properly supported motion for summary judgment, Lesowitz was required to come forward with probative evidence to show that there is a genuine dispute as to a material fact. *See Buchanan v. City of Bolivar*, 99 F.3d 1352, 1360 (6th Cir. 1996) ("In opposition to a motion for summary judgment, it is plaintiff who possesses the burden of demonstrating that [a genuine dispute exists]."). Indeed, in support of their motion for summary judgment, defendants assert that Lesowitz is unable to produce "evidence[,] outside of the police videos[,] that any officer's conduct rose to the level of excessive force." (Mot. at 286.)

Even assuming that Officer Cioci used excessive force against Lesowitz—which, as outlined below, she did not—Officer Cioci is not a party to this action. So, the only cognizable claims against defendants related to the alleged "chokehold" would be under a failure to intervene theory. To succeed on a failure to intervene claim, a plaintiff must demonstrate, that the defendant officers "(1) 'observed or had reason to know that [an unconstitutional use of force] would be or was being used, and (2) … had both the opportunity and the means to prevent the harm from occurring.'" *Sheffy v. City of Covington*, 564 F. App'x 783, 793 (6th Cir. 2014) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).

21

Defendants aver that, on the night of her arrest, Lesowitz was "extremely intoxicated." (Tittle Aff. ¶ 6; Doc. No. 44-3, Affidavit of Kevin Brown ["Brown Aff."] ¶ 4.) And "[a]t no point during [defendants'] interaction with … Lesowitz on October 16, 2015 did [defendants] assault [Lesowitz] or take any action that could have caused the injuries that she has alleged." (Tittle Aff. ¶ 4; Brown Aff. ¶ 2.) Nor did either defendant "witness any other officer … assault her or take any action that could have caused the injuries that she has alleged." (Tittle Aff. ¶ 5; Brown Aff. ¶ 3.) Lesowitz has cited to no evidence to dispute these assertions. For that reason alone, defendants are entitled to summary judgment. *See BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 124 F. App'x 329, 330–31 (6th Cir. 2005) (finding that a plaintiff opposing properly supported motion for summary judgment must set forth specific facts showing that there is a genuine issue for trial. "In other words, the movant [can] challenge the opposing party to 'put up or shut up' on a critical issue.") (quotation marks and citation omitted).

But even if Lesowitz had cited to facts showing that defendants observed and had the opportunity to intervene in Officer Cioci's use of force, the Court finds that the use of force was objectively reasonable considering the facts and circumstances of the situation. *See Standifer*, 587 F. App'x at 924 (whether a use of force is objectively reasonable is a question of law for the court). Lesowitz was combative throughout her interaction with the officers and she routinely disregarded the officers' compliance directives. (*See e.g. id.* at 11:00–11:10 [After placing the hobble on her legs, Officer Tittle asks Lesowitz to "slide [her] feet in" to which Lesowitz yells "you're a fucking badass" and "no, you fucking slide your [feet in]".) The alleged "chokehold" occurred while Officer Tittle and Officer Cioci attempted to secure a seatbelt around Lesowitz. (Brown POV 1 at 11:13–11:11:33.) Officer Tittle, who was standing outside the passenger side of the cruiser, extended the rear seatbelt and handed it to Officer Cioci, who was inside the driver's side of the

22

cruiser. (*Id.*) With the seatbelt across her body (but not yet buckled) Lesowitz leans forward to yell "you're fucking gangsters" at the officers standing outside the cruiser. (*Id.* at 11:19–11:22.) At this point, the video shows Officer Cioci push or move Lesowitz back against her seat with one arm, while buckling the seatbelt with the other. (*Id.* at 11:24–11:29.) The entire incident lasted five seconds, and the motion moving Lesowitz so that she was with her back was against the seat lasted even fewer. (*Id.*). There is no visual evidence that Lesowitz was placed in a chokehold. Rather, the action of pushing, or guiding, or moving Lesowitz back so that her seatbelt could be fastened was reasonable under the circumstances, given that Lesowitz kept leaning forward and was otherwise uncooperative, combative, and noncompliant at the time. Because Officer Cioci's actions were objectively reasonable, there is no Fourth Amendment violation and defendants are entitled to summary judgment on Lesowitz's failure to intervene claim related thereto.

### 2.    Excessive Force Claims while Lesowitz was in Police Custody

Defendants are entitled to summary judgment with regard to Lesowitz's claim that they used excessive force, or failed to intervene with the use of excessive force, while Lesowitz was in police custody. Lesowitz makes clear that she believes her injuries were not caused at the time of her arrest, but were caused while she was in defendants' custody at the Alliance Police Department "during the gap in video that occurred between approximately 2:53 AM to 3:45 AM." (Compl. ¶ 36.)

Defendants have put forth evidence showing that "[a]t no point during [their] interaction with … Lesowitz on October 16, 2015 did [they] assault [Lesowitz] or take any action that could have caused the injuries that she has alleged[]" nor did they "witness any other officer … take any [such] action…." (Tittle Aff. ¶¶ 4–5; Brown Aff. ¶¶ 2–3.) Lesowitz has failed to respond with any evidence to create a genuine issue of material fact with regard to what happened during the "gap"

23

in the video. Indeed, Lesowitz seems to concede that she has no evidence to support her allegation that defendants used excessive force while she was in custody at the Alliance police department. (In her opposition brief, Lesowitz addresses only the two alleged use of force incidents that occurred at the time of her arrest, the "chokehold" and "slamming" her against the trunk of the cruiser.) Because Lesowitz has failed to put forth any evidence to create a genuine dispute with regard to her allegations that defendants used excessive force while she was in police custody at the Alliance Police Department —as required by Fed. R. Civ. P. 56(c)(1)—defendants are entitled to summary judgment on that claim.

## IV.  CONCLUSION

For the reasons set forth, defendants' motion for summary judgment is granted. This case is dismissed.

**IT IS SO ORDERED**.

Dated: August 5, 2020

                                       **HONORABLE SARA LIOI**
                                       **UNITED STATES DISTRICT JUDGE**